1

2

3

4

5

6

7

8                    **IN THE UNITED STATES DISTRICT COURT**

9                    **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11    BYRON MANNING,                          No.  2:16-CV-1458-DMC

12              Plaintiff,

13        v.                                  <u>MEMORANDUM OPINION AND ORDER</u>

14    COMMISSIONER OF SOCIAL
      SECURITY,
15
               Defendant.
16

17

18              Plaintiff seeks judicial review of a final decision of the Commissioner of Social

19    Security ("Commissioner") terminating his previously granted Social Security Disability

20    Insurance under 42 U.S.C. § 405(g).  Pursuant to the written consent of all parties (Docs. 10 and

21    11), this case is before the undersigned as the presiding judge for all purposes, including entry of

22    final judgment.  <u>See</u> 28 U.S.C. § 636(c).  Pending before the court are the parties' cross-motions

23    for summary judgment (Docs. 18 and 21).  For the reasons discussed below, Plaintiff's motion for

24    summary judgement is denied and the Commissioner's cross motion for summary judgment is

25    granted.

26    ///

27    ///

28    ///

                                                    1

# I. BACKGROUND

On November 19, 2004, the Commissioner found Plaintiff disabled as of May 1, 2002, and awarded him disability benefits under Title II of the Social Security Act. CAR 13, 15-16.[1] On January 17, 2012, upon continuing disability review (CDR), the Commissioner determined Plaintiff was no longer disabled as of January 1, 2012. CAR 13, 22. The determination was upheld upon reconsideration after a disability hearing by a State Agency Disability Hearing Officer. CAR 13. Plaintiff timely filed a written request for a hearing before Administrative Law Judge (ALJ) L. Kalei Fong. Id. On June 24, 2014, Plaintiff appeared and testified at a hearing in Sacramento, California. Id. On September 9, 2014, the ALJ issued a decision upholding the Commissioner's finding and on May 3, 2016, the Appeals Council denied reconsideration. CAR 13, 6-8. On June 27, 2016, Plaintiff timely filed a complaint with this court, challenging the decision of the Commissioner under 42 U.S.C. § 405. After the Appeals Council declined review on May 3, 2016, this appeal followed.

## II. THE COMMISSIONER'S FINDINGS

In her September 9, 2014, decision, the ALJ concluded that Plaintiff does not continue to be disabled based on the following relevant findings:

1. At the time of the comparison point decision (CPD), dated November 19, 2004, the claimant had the following medically determinable impairment: schizoaffective disorder;

2. Through January 1, 2012, the date claimant's disability ended, the claimant did not engage in substantial gainful activity;

3. Since January 1, 2012, The claimant does not have an impairment or combination of impairments that meets or medically equals an impairment listed in the regulations;

4. Medical improvement occurred as of January 1, 2012;

5. The medical improvement is related to the ability to work because as of January 1, 2012, the claimant no longer had an impairment or combination of impartments that med or medically equaled the same listing(s) that was met at the time of the CPD;

---

[1] Citations are the to the Certified Administrative Record (CAR) lodged on May 11, 2017 (Doc. 16).

1       6.      The claimant continues to have the following severe
2                  impairment(s): schizoaffective disorder;

7.      The claimant has the following residual functional capacity: full range of work at all exertional levels; the claimant is limited to simple one- and two-step tasks and must work in a low-stress environment;

8.      Considering the claimant's age, education, work experience, residual functional capacity, and the Medical-Vocational Guidelines, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

See CAR 14-21.

### III. LEGAL STANDARD

The court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole. See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. See Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996). It is ". . . such evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 402 (1971). The record as a whole, including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed. See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence. See Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a particular finding, the finding of the Commissioner is conclusive. See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987). Therefore, where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed, see Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

Social security claimants have the initial burden of proving disability. Bowen v. Yuckert,482 U.S. 137, 146 n. 5 (1987). However, "once a claimant has been found to be

3

disabled… a presumption of continuing disability arises in [their] favor." <u>Bellamy v. Secretary of Health and Human Services</u>, 755 F.2d 1380, 1381 (9th Cir.1985) (citing <u>Murray v. Heckler</u>, 722 F.2d 499, 500 (9th Cir.1983)).  Under the Act, however, cases must be reviewed at least once every three years "to determine whether a period of disability has ended." <u>Flaten v. Sec'y of Health & Human Servs.</u>, 44 F.3d 1453, 1460 (9th Cir. 1995); <u>see also</u> <u>Schweiker v. Chilicky</u>, 487 U.S. 412, 415 (1988); 42 U.S.C. § 421(i)(1) (requiring review for continuing eligibility at least once every three years); 20 C.F.R. § 404.1594 (regulation governing termination of benefits).  To determine whether a claimant continues to be disabled for purposes of receiving social security benefits, the Commissioner engages in an eight-step sequential evaluation process.  <u>See</u> 20 C.F.R. § 416.994.  The sequential evaluation proceeds as follows:

> (1) Are you engaging in substantial gainful activity? If you are (and any applicable trial work period has been completed), we will find disability to have ended (see paragraph (d)(5) of this section).

> (2) If you are not, do you have an impairment or combination of impairments which meets or equals the severity of an impairment listed in appendix 1 of this subpart? If you do, your disability will be found to continue.

> (3) If you do not, has there been medical improvement as defined in paragraph (b)(1) of this section? If there has been medical improvement as shown by a decrease in medical severity, see step (4). If there has been no decrease in medical severity, there has been no medical improvement. (See step (5).)

> (4) If there has been medical improvement, we must determine whether it is related to your ability to do work in accordance with paragraphs (b)(1) through (4) of this section; i.e., whether or not there has been an increase in the residual functional capacity based on the impairment(s) that was present at the time of the most recent favorable medical determination. If medical improvement is not related to your ability to do work, see step (5). If medical improvement is related to your ability to do work, see step (6).

> (5) If we found at step (3) that there has been no medical improvement or if we found at step (4) that the medical improvement is not related to your ability to work, we consider whether any of the exceptions in paragraphs (d) and (e) of this section apply. If none of them apply, your disability will be found to continue. If one of the first group of exceptions to medical improvement applies, see step (6). If an exception from the second group of exceptions to medical improvement applies, your disability will be found to have ended. The second group of exceptions to medical improvement may be considered at any point in this process.

1

2    (6) If medical improvement is shown to be related to your ability to do work or if one of the first group of exceptions to medical improvement applies, we will determine whether all your current impairments in combination are severe (see § 404.1521). This determination will consider all your current impairments and the impact of the combination of those impairments on your ability to function. If the residual functional capacity assessment in step (4) above shows significant limitation of your ability to do basic work activities, see step (7). When the evidence shows that all your current impairments in combination do not significantly limit your physical or mental abilities to do basic work activities, these impairments will not be considered severe in nature. If so, you will no longer be considered to be disabled.

8    (7) If your impairment(s) is severe, we will assess your current ability to do substantial gainful activity in accordance with § 404.1560. That is, we will assess your residual functional capacity based on all your current impairments and consider whether you can still do work you have done in the past. If you can do such work, disability will be found to have ended.

12    (8) If you are not able to do work you have done in the past, we will consider whether you can do other work given the residual functional capacity assessment made under paragraph (f)(7) of this section and your age, education, and past work experience (see paragraph (f)(9) of this section for an exception to this rule). If you can, we will find that your disability has ended. If you cannot, we will find that your disability continues.

16    20 C.F.R. § 404.1594(f).[2]

17    In this evaluation process, the Commissioner has the "burden of producing

18   evidence sufficient to rebut [the] presumption of continuing disability." <u>Bellamy</u>, 755 F.2d at

19   1381.  Indeed, the burden of *production* remains with the Commissioner throughout the

20   sequential evaluation process.[3]

21

22

23

24    [2]    <u>See also</u>, 20 CFR § 416.994(b)(5) (similar, but not identical, sequential evaluation applicable to terminations under Title XVI of the Social Security Act, 42 U.S.C.A. § 1382c(a)(4)(A)).

25    [3]    The presumption does not affect the ultimate burden of proof.  It does, however, impose "on the party against whom it is directed the burden of going forward with evidence to rebut or meet the presumption." Fed. R. Evid. 301. The ultimate burden of proving disability remains with plaintiff "even after an initial determination of disability." <u>Iida v. Heckler</u>, 705 F.2d 363, 365 (9th Cir.1983); <u>contra</u>, <u>Griego v. Sullivan</u>, 940 F.2d 942, 944 (5th Cir.1991) (per curiam) ("the ultimate burden of proof lies with the Secretary in termination proceedings").

5

However, a reviewing court will not set aside a decision to terminate benefits unless the determination is based on legal error or is not supported by substantial evidence in the record as a whole. Allen v. Heckler, 749 F.2d 577, 579 (9th Cir.1984).

## IV. ANALYSIS

In his motion for summary judgment, plaintiff argues remand is necessary because: (1) the ALJ's conclusion regarding medical improvement is not based on substantial evidence; (2) the ALJ erred in concluding plaintiff's condition does not satisfy Listing of Impairments 12.03; (3) the ALJ improperly discredited lay witness evidence; (4) the ALJ improperly discounted plaintiff's statements and testimony as not credible; and (5) the ALJ improperly relied on the Medical-Vocational Guidelines.

### A.  Determination Regarding Improvement

The ALJ found medical improvement occurred as of January 1, 2012. Specifically, the ALJ determined there "had been a decrease in medical severity of [Plaintiff's] impairment." CAR 16.  In making this determination the ALJ relied on treatment notes that "generally reflect [Plaintiff's] mental status examinations have been within normal limits."  CAR 18.  The ALJ also noted that there is no medical treatment in the record until July 2014, and that Plaintiff can live on his own, preform his own household chores, cook, socialize, has a valid California driver's license and a vehicle, and no longer experiences paranoia or delusions.  Id. The ALJ additionally relied on evaluations from consultative physicians Drs. Daigle, Canty, and Richwerger, and reviewing physician Dr. Meenakshi.  The ALJ found these doctors' opinions "are consistent with the discussed treatment notes that showed that the [Plaintiff]'s mental condition is well controlled and that there is medical improvement."  CAR 19.  The ALJ then concluded that this evidence "showed that [Plaintiff] has made significant medical improvement." Id.  Plaintiff challenges this conclusion, arguing the ALJ improperly relied on consultative reports that are not supported by the record and that Plaintiff's condition has not improved.

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals.  See Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995).  Ordinarily, more weight is given to the opinion of a treating

professional, who has a greater opportunity to know and observe the patient as an individual, than the opinion of a non-treating professional. See id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987). The least weight is given to the opinion of a non-examining professional. See Pitzer v. Sullivan, 908 F.2d 502, 506 & n.4 (9th Cir. 1990).

In addition to considering its source, to evaluate whether the Commissioner properly rejected a medical opinion the court considers whether: (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. The Commissioner may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons supported by substantial evidence in the record. See Lester, 81 F.3d at 831. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by an examining professional's opinion which is supported by different independent clinical findings, the Commissioner may resolve the conflict. See Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995).

A contradicted opinion of a treating or examining professional may be rejected only for "specific and legitimate" reasons supported by substantial evidence. See Lester, 81 F.3d at 830. This test is met if the Commissioner sets out a detailed and thorough summary of the facts and conflicting clinical evidence, states her interpretation of the evidence, and makes a finding. See Magallanes v. Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989). Absent specific and legitimate reasons, the Commissioner must defer to the opinion of a treating or examining professional. See Lester, 81 F.3d at 830-31. The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional. See id. at 831. In any event, the Commissioner need not give weight to any conclusory opinion supported by minimal clinical findings. See Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999) (rejecting treating physician's conclusory, minimally supported opinion); see also Magallanes, 881 F.2d at 751.

Plaintiff asserts the ALJ erred in relying on the opinions of consultative physicians Drs. Daigle, Canty, and Richwerger, and in disregarding PNP Klee's opinions. This court

disagrees.  Plaintiff raises two major issues related to the ALJ's reliance on the consultative

physicians: (1) Dr. Daigle's opinion is inconsistent with the record and (2) Dr. Canty's and Dr.

Richwerger's opinions do not support a conclusion of medical improvement but rather a

conclusion of ongoing disability.

### 1.    Dr. Daigle's Opinion

Turning first to Dr. Daigle's opinion.  In discussing Dr. Daigle's opinion, the ALJ

stated:

> …Consultative physician, Bradley Daigle, M.D., examined the
> claimant on November 20, 2011 and opined that the claimant is not
> significantly limited in his ability to perform simple one or two-step
> instructions. He is only slightly limited in his ability to follow
> detailed and complex instructions, relate and interact with
> supervisors, co-workers and the public.  He is slightly limited in his
> ability to maintain concentration and attention, persistence and pace
> and associate with day-to-day work activity, including attendance
> and safety.  He is moderately limited in his ability to adapt to the
> stresses common to a normal work environment.

> CAR 19.

The ALJ gave "significant weight" to Dr. Daigle's opinion.  The ALJ also relied on Dr. Daigle's

opinion in her findings regarding plaintiff's daily living.  The ALJ stated:

> In terms of activities of daily living the claimant, at the hearing,
> alleged that he was limited. However, the claimant told an
> examining psychiatrist, that he lives alone, is able to dress and
> groom self., perform household chores, cook, pay bills and
> transport himself to his various life events by either driving a motor
> vehicle or using public transportation.

> CAR 15.

Plaintiff contends that it was error for the ALJ to rely on Dr. Daigle's examination

in her daily living analysis.  This court disagrees.  The daily living section of the ALJ's opinion is

composed of facts provided to Dr. Daigle by Plaintiff.  It cannot be said that these factual

assertions—that Plaintiff lives alone, is able to dress and groom himself, perform household

chores, cook, pay bills, etc.—are improper conclusions.  Rather they are simply recitations of

facts provided by Plaintiff to Dr. Daigle.  Furthermore, these facts are supported by the factual

findings in Dr. Canty's report and Dr. Richwerger's report and thus not inconsistent with the record.

Dr. Daigle's Psychiatric Evaluation of Plaintiff states "I am very skeptical of the diagnosis of bipolar disorder and it would seem that his current manifested anxiety is primarily due to the threat of possibly losing his benefits" CAR 308. Plaintiff charges that both Dr. Daigle's stated skepticism of Plaintiff's claimed bipolar condition, as well as Dr. Daigle's suggestion that Plaintiff may be malingering, are inconsistent with the record.

This court disagrees with Plaintiff's contentions regarding record inconsistencies. While Dr. Canty does not specifically express that he is "skeptical" of Plaintiff's bipolar diagnosis, he does state Plaintiff "certainly does not describe symptoms of bipolar disorder." CAR 331. In fact, the only diagnosis Dr. Canty provides is "Polysubstance abuse in remission per claimant".[4] CAR 330. Additionally, Dr. Richwerger diagnosed Plaintiff with "Mood disorder NOS", not bipolar disorder. CAR 392. Each physician varied in their diagnosis, however all were in agreement about Plaintiff's general abilities to engage in work with only mild to moderate limitations and Plaintiff's abilities to perform daily activities on his own.

Because the mere existence of an impairment is insufficient to establish disability, see Mathew v. Shalala, 10 F.3d 678, 680 (9th Cir. 1993), the ALJ properly looked to Plaintiffs functional capabilities, not just his diagnosis. For that reason, the fact that Dr. Daigle's diagnosis is different than that of the other consultative physicians does not render his opinions improper, and it was not error for the ALJ to rely on such diagnoses. Further, despite Dr. Daigle being the only physician to conclude Plaintiff might be malingering, that opinion was never adopted by the ALJ. Because an ALJ is not required to agree with everything contained in an expert report, reliance on Dr. Daigle's opinion was not improper. See Magallanes v. Bowen, 881 F.3d 747, 753 (9th Cir. 1989) (holding it is possible for an expert opinion to constitute substantial evidence even

---

[4] Dr. Canty's opinion also states "R/O Mood disorder NOS". R/O is the medical abbreviation for "Rule out" and thus is not, in fact, a diagnosis of Mood disorder NOS. See *Common Medical Abbreviations*, Alaska Department of Health and Social Services, http://dhss.alaska.gov/dph/emergency/documents/ems/assets/downloads/common_med_abbrev.pdf

if the ALJ does not agree with everything contained in the expert opinion).  For that reason, it cannot be said that the ALJ erred in relying on Dr. Daigle's medical opinions.

### 2. Dr. Canty's Opinion

Similarly, Plaintiff's argument that Dr. Canty's and Dr. Richweger's opinions support a finding of continued disability rather than improvement is unavailing.  Both Dr. Canty's and Dr. Richwerger's opinions support the ALJ's determination of improvement.  Citing Dr. Canty's report the ALJ concluded,

> …the claimant demonstrated pleasant attitude, normal speech, and euthymic mood. He was open and cooperative, He also reported having several friends. Such evidence shows that the claimant has mild difficulties in maintaining social functioning.

CAR 15

Additionally, the ALJ noted,

> Consultative physician, Timothy Canty, M.D. evaluated the claimant on June 5, 2012 and opined that the claimant is cognitively able to manage money and based on his current description of his symptoms, he would not have significant difficulty performing straightforward work. He would obviously be anxious returning to the workforce after such a long break but this anxiety would not prevent him from performing work. Dr. Canty did not think that the claimant would have difficulty with coworkers, supervisors, or incidental contact with the public.

CAR 19

The ALJ concluded, based in part on Dr. Canty's findings, that Plaintiff's condition has improved.  The ALJ's conclusion is supported by a proper reading of Dr. Canty's report, as well as the other expert reports.  See CAR 328-32, 386-93, 304-309.

Plaintiff argues the ALJ ignored some of the symptoms noted in Dr. Canty's report.  This mischaracterizes the ALJ's use of the expert report.  Though Plaintiff properly cites to certain symptoms Dr. Canty noted, he ignores Dr. Canty's ultimate opinion, on which the ALJ relied.  Dr. Canty reported:

> Based on [Plaintiff']s current description of his symptoms he would not have significant difficulty performing fairly straightforward work. He would obviously be anxious returning to the workforce after such a long break but his anxiety would not prevent him from performing work. I don't think he would have difficulty with

10

coworkers, supervisors, or incidental contact with the public. He doesn't describe symptoms that prevent him from attending activities he is motivated to perform.

CAR 332.

Thus, the ALJ properly relied on Dr. Canty's expert report and ultimate opinion to conclude that despite the symptoms noted, Plaintiff's condition has improved to a level that does not preclude him from working.

### 3. Dr. Richwerger's Opinion

The ALJ relied on Dr. Richwerger's opinion to conclude:

…the claimant demonstrated normal thought processes, but below average concentration and memory, and his understanding of instructions is limited to simple tasks. Such evidence shows that the claimant has moderate difficulties in maintaining concentration, persistence, or pace.

CAR 15.

The ALJ also stated,

A consultative physician, David C. Richwerger, Ed.D., examined the claimant on November 8, 2013 and opined that the claimant has the ability to understand, remember, and carry out simple instructions and interact appropriately with the public, supervisors, and co-workers.

CAR 19.

Plaintiff's argument erroneously focuses on the various symptoms Dr. Richwerger identified—troubled thoughts, difficulty concentrating and remembering, etc.—as support for Plaintiff's ongoing mental impairment. This argument once more neglects to account for the doctor's ultimate opinion that Plaintiff was capable of working. Dr. Richwerger, like Dr. Canty, Dr. Daigle, and even reviewing physician Dr. Meenakshi, concluded that Plaintiff's condition, including all of the symptoms listed, does not preclude him from working. See CAR 386-93. Simply because Plaintiff believes the symptoms point to a different conclusion does not invalidate the conclusions of medical physicians and the ALJ's interpretation on those conclusions. See Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008) (holding the ALJ is the final arbiter with respect to resolving ambiguities of medical evidence), Burch v. Barnhart, 400 F.3d 676, 678

11

(9th Cir. 2005) (holding that the ALJ's conclusion must be upheld where the evidence is susceptible to more than one rational interpretation). Thus, the ALJ properly relied on Dr. Richwerger's expert report and ultimate opinion.

### 4. PNP Klee's Opinion

Plaintiff then argues the ALJ erred in finding PNP Klee's opinion unpersuasive. This Court again disagrees. The ALJ appropriately reviewed the record, including PNP Klee's notes and records, and concluded that record demonstrates normal mental status examinations and does not support a finding of continued disability. See CAR 16-20. Though this Court agrees the ALJ likely erred in concluding PNP Klee is not an acceptable medical source, the ALJ properly determined PNP Klee's opinion is inconsistent with the medical evidence in the record.[5] The ALJ outlined PNP Klee's opinions and stated that they are "inconsistent with consultative physician and State Agency reviewing physicians (conclusions) that the claimant's psychiatric condition is otherwise stable with only mild to moderate limits." CAR 19-20.

In this portion of the ALJ's opinion, the ALJ reviewed each major piece of medical evidence, including the opinions of consultative and reviewing physicians, reports from Plaintiff, as well as the opinions of PNP Klee and Plaintiff's treating physician. CAR 16-20. In reviewing such evidence, the ALJ detailed the conflicting clinical evidence and stated her own interpretation of the evidence, which this court finds is supported by substantial evidence. Because an ALJ may discredit a treating physician's opinion by making a detailed and thorough summary of the facts and conflicting clinical evidence, stating her interpretation of the evidence, and makes a finding, it cannot be said the ALJ erred in finding PNP Klee's opinion unpersuasive. See Magallanes v. Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989).

---

[5] In Gomez v. Chater, 74 F.3d 967, 971 (9th Cir. 1996), the Ninth Circuit held that a nurse practitioner could be considered a medically acceptable source where he worked so closely under a physician that he was acting as a physician's agent. However, Gomez partially relied on 20 C.F.R. § 416.913(a)(6), which has been repealed. See 65 Fed. Red. 34950-01; Molina v. Astrue, 674 F.3d 1104, 1111 n. 3 (9th Cir. 2012). It is unclear if this holding in Gomez remains valid. See Britton v. Colvin, 787 F. 3d 1011, 1013 n. 4 (9th Cir. 2015) (expressing no view on the validity of Gomez but even applying Gomez finding the nurse practitioner not to be a medically acceptable source).

Thus, the ALJ did not err in relying on the consultative physicians' opinions or in finding PNP Klee's opinion unpersuasive.

## B. **Listings Analysis**

The Social Security Regulations "Listing of Impairments" is comprised of impairments to fifteen categories of body systems that are severe enough to preclude a person from performing gainful activity. Young v. Sullivan, 911 F.2d 180, 183-84 (9th Cir. 1990); 20 C.F.R. § 404.1520(d). Conditions described in the listings are considered so severe that they are irrebuttably presumed disabling. 20 C.F.R. § 404.1520(d). In meeting or equaling a listing, all the requirements of that listing must be met. Key v. Heckler, 754 F.2d 1545, 1550 (9th Cir. 1985). Listing 12.03 states the requirements for schizophrenia spectrum and other psychotic disorders. See 20 C.F.R., Part 404, Subpt. P, App'x 1, Listing 12.03. Listing 12.03 has three paragraphs, designated A, B, and C; Plaintiff's mental disorder must satisfy the requirements of both paragraphs A and B, or the requirements of both paragraphs A and C. Id.

Here, the ALJ found, as of January 1, 2012, Plaintiff no longer had an impairment or combination of impairments that met or medically equaled the same listing, 12.03, that was met at the time of the CPD. CAR 16. The ALJ based this determination on evaluations from the consultative physicians, the reviewing physician's report, Plaintiff's treating physician's reports, and the notes of PNP Klee, along with other medical evidence in the record. See CAR 16-20. In finding that Plaintiff does not meet listing 12.03, the ALJ had to determine whether the paragraph C criteria were satisfied. The ALJ stated,

> The undersigned has also considered whether the "paragraph C" criteria are satisfied. In this case, the evidence fails to establish the presence of the "paragraph C" criteria, as there is no evidence (1) repeated and extended episodes of decompensation (2) a likelihood of decompensation in response to changes in mental demands or environment, or (3) an inability to function outside of a highly supportive environment.

CAR 16.

Plaintiff contends the ALJ improperly concluded Plaintiff does not meet Listing 12.03 for schizophrenic disorder. Specifically, Plaintiff argues the ALJ improperly determined he does not satisfy the criteria in paragraph C. This court disagrees. Plaintiff relies heavily on PNP Klee's

opinion as evidence that the requirements of paragraph C are met. However, as discussed above, the ALJ properly determined that PNP Klee's opinion is unpersuasive because it is in conflict with other object medical findings and with the record. Additionally, a review of the ALJ's opinion and the record as a whole reveal that PNP Klee's opinions related to the paragraph C criteria are not supported by evidence and are largely conclusory. Even if PNP Klee was considered a treating physician, it would be proper for the ALJ to reject her opinions on this basis. See Batson v. Comm'r of Soc. Sec., 359 F.3d 1190, 1195 (9th Cir. 2004) (holding a ALJ may discredit treating physicians' opinions that are conclusory, brief, unsupported by the record as a whole or by objective medical findings). Thus, the ALJ properly determined that Plaintiff does not meet the paragraph C requirements and that Plaintiff no longer meets the requirements of Listing 12.03.

### C. Evaluation of Lay Witness and Claimant Testimony

The ALJ, in her Step 7 and Step 8 analysis determined Plaintiff's testimony and Plaintiff's mother's testimony are not entirely credible. The ALJ stated,

> As a result, of the claimant's impairments, he alleges no improvement, in his mental health condition. He continues to be easily distracted and unable to stay focused. He has trouble with concentration, finishing projects and at times is unable to follow instructions or respond to supervision.
>
> The claimant's mother testified that claimant lives alone. He lacks concentration and is unable to follow through on tasks. He is easily frustrated and has trouble comprehending. Mostly he sleeps a lot and watches television. His mother testified that he could not work as he is unable to handle stress and does not like dealing with other people.
>
> …
>
> After considering the evidence of record, the undersigned finds that the claimant's medically determinable impairment could be reasonably been expected to produce the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible due to the following two reasons:
> First, these allegations are inconsistent with clinical findings that show that the claimant's condition is generally well controlled. Treatment notes show claimant treated with Depakote, but he has not taken his medication regularly or with any frequency in years. He reported that he only uses it once or twice a week to help him sleep. He also acknowledged not having his prescription filled in

14

almost two years and that the only reason he requested a refill was because he received a notice from Social Security to be reexamined. In November 2011, the claimant denied suicidal ideation and psychotic thought. He indicated that he has never heard voices. His appetite was good and he was not taking any medication at the time.

Treatment notes also generally reflect that mental status examinations have been within normal limits. There is no psychiatric treatment in the record until January 2013. July 2014, treatment notes show claimant stable on his medication and that it is helping him focus and his mother commented that he was much calmer.

The medical evidence showed that the claimant has made significant medical improvement. He is able to cook. He had a valid California Driver's license and owns a vehicle. He is able to socialize and he no longer experiences paranoia or delusions and his memory had improved.

Second, these allegations are inconsistent with medical opinions that show that the claimant has considerable work-related abilities. For example, consultative physician, Bradley Daigle, M.D., examined the claimant on November 20, 2011 and opined that the claimant is not significantly limited in his ability to perform simple one or two-step instructions. He is only slightly limited in his ability to follow detailed and complex instructions, relate and interact with supervisors, co-workers and the public. He is slightly limited in his ability to maintain concentration and attention, persistence and pace and associate with day-to-day work activity, including attendance and safety. He is moderately limited in his ability to adapt to the stresses common to a normal work environment.

Consultative physician, Timothy Canty, M.D. evaluated the claimant on June 5, 2012 and opined that the claimant is cognitively able to manage money and based on his current description of his symptoms, he would not have significant difficulty performing straightforward work. He would obviously be anxious returning to the workforce after such a long break but this anxiety would not prevent him from performing work. Dr. Canty did not think that the claimant would have difficulty with coworkers, supervisors, or incidental contact with the public.

A consultative physician, David C. Richwerger, Ed.D., examined the claimant on November 8, 2013 and opined that the claimant has the ability to understand, remember, and carry out simple instructions and interact appropriately with the public, supervisors, and co-workers.

State agency reviewing physician, V. Meenakshi, M.D., opined that the claimant is capable performing simple/unskilled tasks.

…

> The claimant's allegations are partially supported by his use of prescription medication and a history of listing level severity. However, the weight of the evidence shows that while the claimant may experience some level of psychiatric issues, the medical evidence showed that it is well controlled and that the claimant could nonetheless perform a wide range of simple/unskilled work.
>
> Thus, the claimant's allegations and his mother, and father's allegations are not entirely credible.

CAR 17-19.

Plaintiff argues the ALJ improperly discredited his testimony and the testimony of his mother.

### 1. Lay Witness Testimony

In determining whether a claimant is disabled, an ALJ generally must consider lay witness testimony concerning a claimant's ability to work. See Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993); 20 C.F.R. §§ 404.1513(d)(4) & (e), 416.913(d)(4) & (e). Indeed, "lay testimony as to a claimant's symptoms or how an impairment affects ability to work is competent evidence . . . and therefore cannot be disregarded without comment." See Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996). Consequently, "[i]f the ALJ wishes to discount the testimony of lay witnesses, he must give reasons that are germane to each witness." Dodrill, 12 F.3d at 919. The ALJ may cite same reasons for rejecting plaintiff's statements to reject third-party statements where the statements are similar. See Valentine v. Commissioner Soc. Sec. Admin., 574 F.3d 685, 694 (9th Cir. 2009) (approving rejection of a third-party family member's testimony, which was similar to the claimant's, for the same reasons given for rejection of the claimant's complaints).

The ALJ, however, need not discuss all evidence presented. See Vincent on Behalf of Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984). Rather, he must explain why "significant probative evidence has been rejected." Id. (citing Cotter v. Harris, 642 F.2d 700, 706 (3d Cir.1981). Applying this standard, the court held that the ALJ properly ignored evidence which was neither significant nor probative. See id. at 1395. As to a letter from a treating psychiatrist, the court reasoned that, because the ALJ must explain why he rejected uncontroverted medical evidence, the ALJ did not err in ignoring the doctor's letter which was

controverted by other medical evidence considered in the decision.  See id.  As to lay witness testimony concerning the plaintiff's mental functioning as a result of a second stroke, the court concluded that the evidence was properly ignored because it "conflicted with the available medical evidence" assessing the plaintiff's mental capacity.  Id.

In Stout v. Commissioner, the Ninth Circuit recently considered an ALJ's silent disregard of lay witness testimony.  See 454 F.3d 1050, 1053-54 (9th Cir. 2006).  The lay witness had testified about the plaintiff's "inability to deal with the demands of work" due to alleged back pain and mental impairments.  Id.  The witnesses, who were former co-workers testified about the plaintiff's frustration with simple tasks and uncommon need for supervision.  See id.  Noting that the lay witness testimony in question was "consistent with medical evidence," the court in Stout concluded that the "ALJ was required to consider and comment upon the uncontradicted lay testimony, as it concerned how Stout's impairments impact his ability to work."  Id. at 1053. The Commissioner conceded that the ALJ's silent disregard of the lay testimony contravened Ninth Circuit case law and the controlling regulations, and the Ninth Circuit rejected the Commissioner's request that the error be disregarded as harmless.  See id. at 1054-55.  The court concluded:

> Because the ALJ failed to provide any reasons for rejecting competent lay testimony, and because we conclude that error was not harmless,
> substantial evidence does not support the Commissioner's decision . . .

Id. at 1056-67.

From this case law, the court concludes that the rule for lay witness testimony depends on whether the testimony in question is controverted or consistent with the medical evidence.  If it is controverted, then the ALJ does not err by ignoring it.  See Vincent, 739 F.2d at 1395.  If lay witness testimony is consistent with the medical evidence, then the ALJ must consider and comment upon it.  See Stout, 454 F.3d at 1053.  However, the Commissioner's regulations require the ALJ consider lay witness testimony in certain types of cases.  See Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996); SSR 88-13.  That ruling requires the ALJ to consider third-party lay witness evidence where the plaintiff alleges pain or other symptoms that are not shown by the medical evidence.  See id.  Thus, in cases where the plaintiff alleges

impairments, such as chronic fatigue or pain (which by their very nature do not always produce clinical medical evidence), it is impossible for the court to conclude that lay witness evidence concerning the plaintiff's abilities is necessarily controverted such that it may be properly ignored. Therefore, in these types of cases, the ALJ is required by the regulations and case law to consider lay witness evidence.

Plaintiff argues his mother's testimony is consistent with the evidence in the record. This Court disagrees. Plaintiff correctly states that Plaintiff's testimony, his mother's testimony, and portions of PNP Klee's conclusory opinions are in line. However, the ALJ properly concluded that each of those pieces of evidence are not supported by the medical evidence in the record. The ALJ reviewed the testimony of Plaintiff's mother, compared it to the medical evidence in the record, and concluded that his mother's testimony was not consistent with the medical evidence. See CAR 18-19. Because an ALJ may properly discredit lay witness testimony if it is controverted by the medical evidence in the record the ALJ did not err by finding Plaintiff's mother's testimony not entirely credible. See Vincent, 739 F.2d at 1395.

### 2. Plaintiff's Testimony

The Commissioner determines whether a disability applicant is credible, and the court defers to the Commissioner's discretion if the Commissioner used the proper process and provided proper reasons. See Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996). An explicit credibility finding must be supported by specific, cogent reasons. See Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990). General findings are insufficient. See Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995). Rather, the Commissioner must identify what testimony is not credible and what evidence undermines the testimony. See id. Moreover, unless there is affirmative evidence in the record of malingering, the Commissioner's reasons for rejecting testimony as not credible must be "clear and convincing." See id.; see also Carmickle v. Commissioner, 533 F.3d 1155, 1160 (9th Cir. 2008) (citing Lingenfelter v Astrue, 504 F.3d 1028, 1936 (9th Cir. 2007), and Gregor v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006)).

If there is objective medical evidence of an underlying impairment, the Commissioner may not discredit a claimant's testimony as to the severity of symptoms merely

because they are unsupported by objective medical evidence.  See Bunnell v. Sullivan, 947 F.2d

341, 347-48 (9th Cir. 1991) (en banc).  As the Ninth Circuit explained in Smolen v. Chater:

> The claimant need not produce objective medical evidence of the [symptom] itself, or the severity thereof.  Nor must the claimant produce objective medical evidence of the causal relationship between the medically determinable impairment and the symptom.  By requiring that the medical impairment "could reasonably be expected to produce" pain or another symptom, the Cotton test requires only that the causal relationship be a reasonable inference, not a medically proven phenomenon.
>
> 80 F.3d 1273, 1282 (9th Cir. 1996) (referring to the test established in Cotton v. Bowen, 799 F.2d 1403 (9th Cir. 1986)).

The Commissioner may, however, consider the nature of the symptoms alleged,

including aggravating factors, medication, treatment, and functional restrictions.  See Bunnell,

947 F.2d at 345-47.  In weighing credibility, the Commissioner may also consider: (1) the

claimant's reputation for truthfulness, prior inconsistent statements, or other inconsistent

testimony; (2) unexplained or inadequately explained failure to seek treatment or to follow a

prescribed course of treatment; (3) the claimant's daily activities; (4) work records; and (5)

physician and third-party testimony about the nature, severity, and effect of symptoms.  See

Smolen, 80 F.3d at 1284 (citations omitted).  It is also appropriate to consider whether the

claimant cooperated during physical examinations or provided conflicting statements concerning

drug and/or alcohol use.  See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002).  If the

claimant testifies as to symptoms greater than would normally be produced by a given

impairment, the ALJ may disbelieve that testimony provided specific findings are made.  See

Carmickle, 533 F.3d at 1161 (citing Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989)).

Regarding reliance on a claimant's daily activities to find testimony of disabling

pain not credible, the Social Security Act does not require that disability claimants be utterly

incapacitated.  See Fair v. Bowen, 885 F.2d 597, 602 (9th Cir. 1989).  The Ninth Circuit has

repeatedly held that the ". . . mere fact that a plaintiff has carried out certain daily activities . . .

does not . . .[necessarily] detract from her credibility as to her overall disability."  See Orn v.

Astrue, 495 F.3d 625, 639 (9th Cir. 2007) (quoting Vertigan v. Heller, 260 F.3d 1044, 1050 (9th

Cir. 2001)); see also Howard v. Heckler, 782 F.2d 1484, 1488 (9th Cir. 1986) (observing that a

claim of pain-induced disability is not necessarily gainsaid by a capacity to engage in periodic restricted travel); Gallant v. Heckler, 753 F.2d 1450, 1453 (9th Cir. 1984) (concluding that the claimant was entitled to benefits based on constant leg and back pain despite the claimant's ability to cook meals and wash dishes); Fair, 885 F.2d at 603 (observing that "many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication").  Daily activities must be such that they show that the claimant is ". . .able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting." Fair, 885 F.2d at 603.  The ALJ must make specific findings in this regard before relying on daily activities to find a claimant's pain testimony not credible.  See Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005).

   Plaintiff asserts the ALJ erred in finding his testimony not entirely credible.  This Court disagrees.  The ALJ discussed the specific symptom testimony that the ALJ deemed not credible—easily distracted, unable to stay focused, trouble concentrating and finishing projects, unable to follow directions, unable to respond to supervision.  CAR 17.  The ALJ then provided two specific reasons for finding that symptom testimony not credible: (1) the allegations are inconsistent with clinical findings that show that Plaintiffs condition is generally well controlled, and (2) the allegations are inconsistent with medical opinions that show that the claimant has considerable work-related abilities.  CAR 18.  The ALJ went on to discuss in detail these two specific reasons.  Because an ALJ may properly discredit a claimant's testimony by identifying what testimony is not credible and specifying what evidence undermines the testimony, as the ALJ did here, it cannot be said that the ALJ acted impermissibly.  See Lester, 81 F.3d at 834.  The ALJ also discussed Plaintiff's delay in treatment, other related testimony, as well as Plaintiff's daily activities.  When discussing Plaintiff's daily activities, the ALJ properly concluded that they demonstrate an improvement in Plaintiffs condition and an ability of Plaintiff to spend a substantial part of his day performing work related tasks.  See Fair, 885 F.2d at 603.  Because the ALJ properly identified what testimony was not credible, specified the evidence that undermined Plaintiff's testimony, and correctly looked at factors such as delay in treatment and daily

activities, this Court finds the ALJ did not err in concluding Plaintiff's testimony was not entirely credible.

### D. <u>Vocational Finding</u>

At the final step of the CDR sequential evaluation, a limited burden of production shifts to the Commissioner to identify jobs that exist in significant numbers that Plaintiff can perform based on his age, education, and work experience. The Commissioner can meet this burden by relying on the testimony of a Vocational Expert or by reference to the Medical-Vocational Guidelines. The ALJ here stated,

> If the claimant has solely nonexertional limitations, section 204.00 in the Medical Vocational Guidelines provides a framework for decision-making.
> As of January 1, 2012, the claimant's ability to perform work at all exertional levels had been comprised by nonexertional limitation. However, these limitations had little or no effect on the occupational base of unskilled work at all exertional levels. A finding of "not disabled" is therefore appropriate under the framework of section 204.00 in the Medical-Vocational Guidelines.

CAR 20-21.

The ALJ then concluded, "As of January 1, 2012, considering the claimant's age, education, work experience, and residual functional capacity the claimant was able to perform a significant number of jobs in the national economy." CAR 20. Plaintiff contends that it was error for the ALJ to rely on the Medical Vocational Guidelines ("Grids").

The Medical-Vocational Guidelines provide a uniform conclusion about disability for various combinations of age, education, previous work experience, and residual functional capacity. The Grids allow the Commissioner to streamline the administrative process and encourage uniform treatment of claims based on the number of jobs in the national economy for any given category of residual functioning capacity. <u>See</u> <u>Heckler v. Campbell</u>, 461 U.S. 458, 460-62 (1983) (discussing creation and purpose of the Grids).

The Commissioner may apply the Grids in lieu of taking the testimony of a vocational expert only when the Grids accurately and completely describe the claimant's abilities and limitations. <u>See</u> <u>Jones v. Heckler</u>, 760 F.2d 993, 998 (9th Cir. 1985); <u>see</u> <u>also</u> <u>Heckler v. Campbell</u>, 461 U.S. 458, 462 n.5 (1983). Thus, the Commissioner generally may not rely on the

Grids if a claimant suffers from non-exertional limitations because the Grids are based on exertional strength factors only.[6]  See 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00(b). "If a claimant has an impairment that limits his or her ability to work without directly affecting his or her strength, the claimant is said to have non-exertional . . . limitations that are not covered by the Grids."  Penny v. Sullivan, 2 F.3d 953, 958 (9th Cir. 1993) (citing 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00(d), (e)).  The Commissioner may, however, rely on the Grids even when a claimant has combined exertional and non-exertional limitations, if non-exertional limitations do not impact the claimant's exertional capabilities.  See Bates v. Sullivan, 894 F.2d 1059, 1063 (9th Cir. 1990); Polny v. Bowen, 864 F.2d 661, 663-64 (9th Cir. 1988).

    In cases where the Grids are not fully applicable, the ALJ may meet his burden under step five of the sequential analysis by propounding to a vocational expert hypothetical questions based on medical assumptions, supported by substantial evidence, that reflect all the plaintiff's limitations.  See Roberts v. Shalala, 66 F.3d 179, 184 (9th Cir. 1995).  Specifically, where the Grids are inapplicable because plaintiff has sufficient non-exertional limitations, the ALJ is required to obtain vocational expert testimony.  See Burkhart v. Bowen, 587 F.2d 1335, 1341 (9th Cir. 1988).

    Plaintiff argues the ALJ improperly relied on the Grids in her analysis.  However, Plaintiff's basis for this argument is unclear.  Plaintiff seems to argue that the ALJ erred in concluding he had only nonexertional limitations, making the use of the Grids inappropriate.

---

[6]    Exertional capabilities are the primary strength activities of sitting, standing, walking, lifting, carrying, pushing, or pulling and are generally defined in terms of ability to perform sedentary, light, medium, heavy, or very heavy work.  See 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00(a).  "Sedentary work" involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  See 20 C.F.R. §§ 404.1567(a) and 416.967(a).  "Light work" involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  See 20 C.F.R. §§ 404.1567(b) and 416.967(b).  "Medium work" involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds.  See 20 C.F.R. §§ 404.1567(c) and 416.967(c).  "Heavy work" involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.  See 20 C.F.R. §§ 404.1567(d) and 416.967(d).  "Very heavy work" involves lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more.  See 20 C.F.R. §§ 404.1567(e) and 416.967(e).  Non-exertional activities include mental, sensory, postural, manipulative, and environmental matters which do not directly affect the primary strength activities.  See 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00(e).

1  This argument is not persuasive.   Here, the ALJ assessed Plaintiff's RFC for work at all levels

2  with a limitation to simple one- or two-step tasks in a low stress environment.  This assessment is

3  supported by the medical evidence and the witness testimony in the record as discussed above.

4  The ALJ properly determined that Plaintiff's nonexertional limitations are not sufficiently severe

5  so as to significantly limit the range of work permitted by Plaintiff's exertional limitations.

6  Because an ALJ may rely on the Grids so long as a claimant's non-exertional limitations are not

7  sufficiently severe so as to significantly limit the rage of work permitted by the claimant's

8  exertional limitations, the ALJ here did not err in applying them.  See Hoopai v. Astrue, 499 F.3d

9  1071, 1075 (9th Cir. 2007).

10           Thus, it was not improper for the ALJ to rely on the Grids at the final step of the

11  CDR sequential evaluation.

12

13                                 **V.  CONCLUSION**

14           Based on the foregoing, the court concludes that the Commissioner's final decision

15  is based on substantial evidence and proper legal analysis.  Accordingly, IT IS HEREBY

16  ORDERED that:

17           1.       Plaintiff's motion for summary judgment (Doc. 18) is denied;

18           2.       Defendant's motion for summary judgment (Doc. 21) is granted;

19           3.       The Commissioner's final decision is affirmed; and

20           4.       The Clerk of the Court is directed to enter judgment and close this file.

21

22  Dated:  November 2, 2018

23  _____

24  DENNIS M. COTA
    UNITED STATES MAGISTRATE JUDGE

25

26

27

28